**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT SPECIALIZED LOAN SERVICING'S MOTION TO TRANSFER,
OR, IN THE ALTERNATIVE, TO DISMISS CERTAIN COUNTS IN
PLAINTIF'S COMPLAINT**

## I. OVERVIEW

Defendant Chase has, since the origination of Plaintiff Lupo's mortgage loan, over-calculated his escrow, and until the fifth year of his relationship with Defendant Chase, Plaintiff was able to have the Defendant Chase correct the miscalculation. Defendant Chase has also lost Plaintiff Lupo's payments in the past, which Plaintiff Lupo was able to locate for them through his ACH (automated clearing house) routing number. Plaintiff Lupo had a perfect credit history and payment history with Defendant Chase prior to the events recounted below. Amended Complaint, ¶¶ 37-40, ¶43.

Plaintiff Louis Lupo is in foreclosure now because the Defendant Chase increased his forecasted escrow by over 150% for 2012-2013. Defendant Chase charged him late fees and monthly property maintenance fees entitled "corporate advance -- property preservation disbursement" based upon this miscalculated escrow increase, and Defendant Chase deemed Plaintiff Lupo in default based upon the claimed escrow shortage. Having deemed Plaintiff Lupo in default, Defendant Chase then retroactively reported Plaintiff Lupo as late on one mortgage payment on his credit report. Believing at the time that the escrow miscalculation and credit reporting error were bona fide servicing errors, Plaintiff Lupo attempted to correct these errors on multiple occasions by telephone. When Plaintiff Lupo disputed the charge with the credit reporting agency, Defendant Chase confirmed it without investigation. Amended Complaint, ¶¶ 38-78, 107-108, 177-180.

Plaintiff Lupo also submitted two written requests to Defendant Chase requesting that it correctly calculate his escrow and correct his credit report.  He included, with his second request, a copy of his own ACH audit trail, which showed his monthly payments as being processed by Defendant Chase as well as the screenshots of the activity screen for his mortgage loan, which showed numerous errors in his mortgage loan account, including misapplication reversals and timely receipt of his payments but failure of Chase to timely apply them. The Defendant Chase refused to investigate or recalculate Plaintiff Lupo's escrow, although the simplest arithmetic, using Defendant Chase's own figures for taxes and insurance, showed the significant and erroneous escrow increase.  Exactly two months after Defendant Chase's written refusal to recalculate Plaintiff Lupo's escrow and reconcile his account, Defendant Chase transferred the servicing of his mortgage loan to Defendant Specialized Loan Servicing in June 2013. Amended Complaint, ¶¶ 79-121.

Plaintiff Lupo, believing that Defendant SLS was a legitimate mortgage servicer operating at arms length from Defendant Chase, and that the transfer had been accomplished pursuant to his request to Defendant Chase for a servicer who could better manage his escrow account after Defendant Chase refused Plaintiff Lupo's request to self-manage his escrow, Amended Complaint,  ¶¶ 37-61, ¶¶ 65-66, once again requested that the escrow be calculated correctly, first in July in an attempt to have his ACH payments accepted by Defendant SLS, who preferred certified checks or money orders. Not receiving a response to his July request, and upon the refusal of SLS to accept his July and then his August ACH payments, Plaintiff Lupo faxed another request in August, attaching additional documentation to show the errors in his Chase mortgage loan account. Defendant SLS refused to investigate or correct the escrow miscalculations,

refused to investigate or correct the credit reporting errors, charged him monthly "property inspection fees," late charges, and legal fees, and held his payments to Defendant Chase in suspense.

Unknown to Plaintiff at the time, Defendant SLS at all times considered Plaintiff's mortgage loan in default, and because of its default status, based upon the erroneous escrow calculations of Defendant Chase, refused to accept any reasonable payment method that would provide Plaintiff Lupo with an audit trail. Amended Complaint, ¶¶ 129-151, ¶¶ 177-80. Defendant SLS for months pursued debt collection activities that Plaintiff Lupo alleges violates federal and state law. Defendant SLS foreclosed upon Plaintiff's residence on February 4, 2014, transferred his Deed of Trust to a list of multiple substitute trustees located in California, placed his residential property up for bid on a national website entitled auction.com, and scheduled the sale for March 4, 2014. Plaintiff's residential property is valued at approximately $195,000 on which he owes roughly $160,000. Plaintiff filed the instant lawsuit on February 19, 2014. Amended Complaint, ¶¶ 144-146, ¶¶ 152-159 ¶¶ 165-173, ¶ 181, ECF 1.

The above alleged unlawful actions took place while Plaintiff Lupo was domiciled in the State of Maryland, where he continues to work and live. Amended Complaint, ¶¶ 1-11. Plaintiff Lupo alleges that Defendants Chase and SLS acted with intent and that their business model incentivizes default based upon escrow miscalculations, as through the default process the Defendants generate additional fees, high late charges, and the management fees for foreclosure. Further, Plaintiff alleges the Defendants intentionally or recklessly adopted internal enterprise-wide software processes that encourage, facilitate, or assist in unfair and deceptive trade practices, fraud

and misrepresentations, that is, Defendants designed, implemented, and executed

software processes that would resist and/or prohibit resolution of Defendant Chase's

servicing error but rather were calculated to escalate the servicing error to the ultimate

benefit of Defendant's Chase and SLS.  Amended Complaint, ¶¶ 20-22.

The facts alleged in the Amended Complaint show that the Defendants have

demonstrated implacable intransigence to working this problem through with the

Plaintiff.

## II. SLS's MOTION TO DISMISS OR TRANSFER ON THE BASIS OF VENUE

### A. Defendant SLS's Fed. R. Civ. P. 12(b)(3) Motion to Dismiss

SLS moves this Court to dismiss the Complaint for improper venue pursuant to

Fed. R. Civ. P. 12(b)(3).  Plaintiff does not dispute the standard of review nor that the

equitable remedy requested in the Complaint, the constructive trust, relates to the title of

the property.  However, Plaintiff disagrees that one count in the Complaint (unjust

enrichment) and one of many remedies requested (constructive trust) divests this Court of

jurisdiction or dictates that the case be transferred or dismissed.  Plaintiff's first

Complaint alleged twenty (20) counts and was predicated on allegations that the

Defendants violated several federal statutes not once, but multiple times.  The unjust

enrichment claim and the requested remedy of a constructive trust is the only claim in the

complaint that directly addresses the Defendant SLS's inequitable debt collection

activities against the Plaintiff's real property.

Further, Plaintiff asserts that the requested constructive trust is an *in personam,*

not an *in rem* remedy, and it sounds in equity. *See, e.g.,* Alden, Robby. "Modernizing the

Situs Rule for Real Property Conflicts." 65 *Tex. L. Rev.* 585 (Feb. 1987) (Analysis of how

*Shaffer v. Heitner*, 433 U.S. 186 (1977) and *Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981) have changed the territorially-oriented jurisdiction of *Pennoyer v. Neff*, 96 U.S. 714 (1878)). The Plaintiff has not requested a constructive trust against the property but a constructive trust in favor of the Plaintiff so that the Plaintiff may benefit from and use the property.  Plaintiff asserts a constructive trust is the appropriate remedy in a Complaint filed in federal court based on violations of federal statutes that also raises pendant state law claims, especially as a constructive trust may be applied proportionately to the degree that unjust enrichment is found.  As clarified in the Amended Complaint, the alleged illegal actions took place in Maryland. Amended Complaint, ¶¶ 1-11. Further, if this Court dismisses the Plaintiff's unjust enrichment claim as Defendant SLS requests, then the grounds upon which Defendant's Fed. R. Civ. P. 12(b)(3) Motion to Dismiss is based (the alleged *in rem* nature of the unjust enrichment remedy requested) becomes moot.

### B. Defendant SLS's 28 U.S.C. § 1404(a) Motion to Transfer on *Forum Non Conveniens* Grounds

Plaintiff's initial complaint pled, under section "III. Jurisdiction and Venue," ¶ 15, that "Venue is proper in this Judicial District as the claimed violations occurred in this district." Plaintiff has filed an amended complaint that more specifically details that the operative set of facts that give rise to the federal complaint occurred solely in the State of Maryland. Amended Complaint, ¶¶ 40-181.  Plaintiff has filed the Complaint based on actions that the Defendants took in Maryland that violate federal law.  Given that the operative sets of facts occurred in this Judicial District, Plaintiff maintains that this action could not have been brought in the U.S. District Court for the Northern District of Texas.

However, *assuming arguendo* that it could have been brought in the U.S. District Court for the Northern District of Texas, a 28 U.S.C. § 1404(a) analysis would weigh in favor of maintaining venue in the U.S. District Court for the District of Maryland.

*Plaintiff's Choice of Forum*: Plaintiff Lupo does live and work in Maryland; Amended Complaint, ¶¶ 1-5. The applicable law for the federal causes of action would be federal law, and specifically, the interpretation of federal law by the Fourth Circuit and the United State District Court for the District of Maryland; only three counts of the Complaint require application of Texas state law: the breach of contract claim, the breach of duty of duty of good faith and far dealing, and the unjust enrichment claim.

*Convenience of Parties*: Defendant SLS claims it will need to retain outside counsel of the three claims that require application of Texas law. However, transferring the Complaint to Texas does not solve this problem, as the Counts based on Maryland's consumer protection statutes would then presumably require the Texas-based counsel to retain outside counsel with expertise in Maryland state law. If anything, Defendant SLS's Motion to Dismiss demonstrates that present counsel is fluent in Deeds of Trust and fully competent to research Texas case law. Transfer would greatly disadvantage the Pro Se Plaintiff, who is prohibited by all federal courts from filing electronically. Once Plaintiff Lupo retains counsel, if that counsel must be Texas-based, he is all but foreclosed from personal meetings and the contact essential for establishing a successful attorney-client relationship. Plaintiff Lupo's professional occupation demands his continuous presence in the D.C. Metropolitan area. Amended Complaint, ¶¶ 2-4.

*Convenience of Witnesses*: In reference to witnesses, the Defendant SLS focuses solely on the one unjust enrichment claim, when Plaintiff has alleged multiple counts

both the first Complaint and in the Amended Complaint that turn on events that occurred in Maryland and that may reasonably require the Plaintiff's testimony and the testimony of expert witnesses in forensic software systems analyses. This Court may take judicial notice of the fact that forensic software analyses is unquestionably a province of expertise in which Maryland abounds. Defendant claims that the debt collectors handling the foreclosure action in Texas would be called as third-party witnesses, but Plaintiff has not alleged any cause of action that would require the testimony of those attorneys nor of the attorneys in California who are acting as substitute trustees for auction.com, the vehicle for Defendant SLS's debt collection and an international website based in California. Amended Complaint, ¶¶ 171-73  Further, many of these asserted witness inconveniences can be expeditiously handled by stipulation between the parties or expert affidavit.

*Interests of Justice and Judicial Economy:* Finally, the interests of justice and judicial economy would weigh in favor of maintaining the instant Complaint in this Court. As Plaintiff has already indicated in his Motion Opposing Defendant Chase's Motion for a Twenty-Eight Day extension. ECF 14, Plaintiff Lupo is greatly prejudiced by any delay in the instant litigation because of the negative effect the Defendants' actions are having on his employment. Amended Complaint, ¶¶ 163-175.  Transfer would simply delay this litigation even more, unnecessarily burden the federal judiciary by complicating a straight-forward complaint centered on alleged wrongful acts that occurred in Maryland, and greatly prejudice the Plaintiff. It is both convenient and fair for this Court to retain this case in the instant venue.

### III. Defendant SLS's Motion to Dismiss Certain Counts for Failure to State a Claim

#### A.  Standard of Review

Plaintiff does not dispute the standard of review presented by Defendant SLS for a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to the extent that Plaintiff Lupo has alleged fraud, which must be pled with particularity. Fed. R. Civ. P. 9(b).  The Federal Rules of Civil Procedure provide for notice pleading, and in determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

#### B.  Plaintiff Has Properly Pled Fair Debt Collection Practices Act ("FDCPA") Claims Against Defendant SLS

The Plaintiff has submitted an Amended Complaint to correct the FDCPA pleading deficiencies raised by SLS in its Motion to Dismiss.  Plaintiff has specified that Defendant SLS made express demands for payments and refused to accept a specific form of payment, the ACH (automated clearing house) payment, which payment carries an audit trail.  Plaintiff has specified the amount of the debt the Defendant SLS demanded and the person to whom the debt should be paid.  Plaintiff has also specified further notices and activity by Defendant SLS that clarifies that SLS was acting as a debt collector, that its principal business is debt collection, and as a debt collector violated numerous provisions of the FDCPA. Amended Complaint, ¶¶ 130-57, 167-69.  Further, Defendant SLS specifically used the language required by the FDCPA in some of its demand for payments to avoid liability under the FDCPA, 15 U.S.C. § 15 U.S.C. §

1692(e)(11), which provides that the following is a "false, deceptive, or misleading representation":

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

That is, Defendant SLS considered itself to be a debt collector subject to the FDCPA. Amended Complaint, ¶ 145.

As also alleged in the Amended Complaint, SLS is a division of JPMorgan Chase Bank, N.A. As the Amended Complaint specifies, there are no records in the County Recorder's office showing that the Deed of Trust or Note were sold or assigned to the Defendant SLS. Amended Complaint, ¶¶ 14, 182-83. SLS nonetheless commenced foreclosure proceedings, transferred the Deed of Trust to substitute trustees in California, and placed Plaintiff's residence for foreclosure auction upon a national website, auction.com. As a division of JPMorgan Chase Bank, N.A., Defendant SLS is not entitled to any of the exceptions from being considered a "debt collector" under 15 U.S.C. § 1692a(6)(F)

The FDCPA is explicit in including a debt collector such as Defendant SLS, who is Defendant JPMorgan Chase Bank, N.A., using a name other than its own:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . .*

15 U.S.C. § 1692a(6)

That is, as Defendant JPMorgan is using another name to indicate that a third person, Defendant SLS, is collecting the debt, Defendant SLS can not fall within the class of entities excepted by the FDCPA.

The opening sentence of § 1692a(6)(F) repeats the exclusion of entities such as SLS stated above, as the exceptions it lists applies only to any person collecting or attempting to collect a debt "owed or due or asserted to be owed or due ***another . . ..*** " 15 U.S.C. § 1692a(6)(F). Defendant SLS was not collecting debts owed or due to another; it was collecting debts owed or due to itself, as JPMorgan Chase Bank, N.A., but doing so in another name.

Further, if Defendant SLS is not a division of the Defendant JPMorgan Chase, N.A., then Defendant SLS can still not claim § 1692a(6)(F)(i) and (ii) excepts it from being included within the term "debt collector" and subject to FDCPA. The section 1692a(6)(F) exception from the term "debt collector" provides in full:

13

(F) any person collecting or attempting to collect any debt owed or due or asserted

to be owed or due another to the extent such activity

> (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow
>
> arrangement;
>
> (ii) concerns a debt which was originated by such person;
>
> (iii) concerns a debt which was not in default at the time it was obtained
>
> by such person; or
>
> (iv) concerns a debt obtained by such person as a secured party in a
>
> commercial credit transaction involving the creditor.

As to the § 1692a(6)(F)(i) exception, the Fourth Circuit in *Wilson v. Draper & Goldberg,*

*P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), explicitly rejected the argument that proceeding

*in rem* rather than *in personam* immunizes a debt collector from the FDCPA.  In *Wilson*,

the Defendants claimed that they were fiduciaries and thus benefited from the exception

of § 1692a(6)(F)(i).  The Fourth Circuit stated:

> We disagree. The fact that trustees foreclosing on a deed of trust are
>
> fiduciaries only partially answers the question. Rather, the critical inquiry is
>
> whether a trustee's actions are "incidental to a bona fide fiduciary obligation." [§
>
> 1692a(6)(F)(i)] We conclude that a trustee's actions to foreclose on a property
>
> pursuant to a deed of trust are not "incidental" to its fiduciary obligation. Rather,
>
> they are central to it. Thus, to the extent Defendants used the foreclosure process
>
> to collect Wilson's alleged debt, they cannot benefit from the exemption
>
> contained in § 1692a(6)(F)(i). Cf. FTC Official Staff Commentary  On the Fair
>
> Debt Collection Practices Act, 53 Fed. Reg. 50097, 50103 (Fed. Trade Comm'n

14

Dec. 13, 1988) ("The exemption (i) for bona fide fiduciary obligations or escrow arrangements applies to entities such as trust departments of banks, and escrow companies. It does not include a party who is named as a debtor's trustee solely for the purpose of conducting a foreclosure sale (i.e., exercising a power of sale in the event of default on a loan).").

*Id.* at 377.

Plaintiff has not alleged that Defendant SLS was acting as a trust department or an escrow company; Plaintiff has neither alleged the Defendant SLS was a fiduciary.

The § 1692a(6)(F)(i) exception simply does not apply to a specialized mortgage servicing entity whose specialization is debt collection and foreclosure. *See also Ademiluyi v. Pennymac Mortg. Inv. Trust Holdings I*, LLC, 929 F. Supp. 2d 502, 522-23 (D. Md. 2013) ("mortgage foreclosure is debt collection under the FDCPA" and cases cited therein, including *Wilson, supra*, 443 F.3d at 378-79, cited by *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 462 (6th Cir. 2013) (mortgage foreclosure activity is debt collection under FDCPA); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605, 1609-11, 176 L. Ed. 2d 519 (2010) (holding that attorney pursuing mortgage foreclosure on behalf of mortgagor was subject to FDCPA as a debt collector); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) (concluding that pre-suit calls and demand letters for payment on debt secured by lien on home did not "change its character as a debt or turn [the] communications into something other than an effort to collect that debt")).

Further, Plaintiff has not alleged that the Note and DOT were transferred, only that the Plaintiff received "Notice of Assignment, Sale, or Transfer of Servicing Rights."

¶¶ 121, 129.  Plaintiff has alleged no facts that would indicate that SLS was, in fact, the holder of the Note and Deed in Trust.  Thus, the cases cited by SLS for its argument that it is excepted by § 1692a(6)(F)(i) are inapposite.  In *Ruggia v. Washington Mut. Bank*, 719 F. Supp. 2d 642, 648 (E.D. Va. 2010, *aff'd* 442 Fed. Appx. 816 (4th Cir. 2011) (per curiam), the Note and Deed of Trust were properly negotiated to the subsequent holder, who was thus excepted as a creditor exercising its fiduciary duties, not a debt collector; *Scott v. Wells Fargo Home Mortg., Inc.,* 326 F. Supp. 709, 718 E.D. Va. 2003 ("creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA," citing *Howe v. Reader's Digest Ass'n*, 686 F.Supp 461 (S.D.N.Y. 1988) (Summary judgment for Defendant dismissing consumer's claim that magazine violated FDCPA where creditor magazine is not debt collector under 15 U.S.C. § 1692a and did not participate in collection activity.))  *See also Sheard v. Bank of America*, U.S. Dist. LEXIS 80953, *5 (D. Md. 2011) (finding Defendants not "debt collectors," but are instead the mortgagor and mortgage servicing company who entered into a loan agreement directly with Sheard and are attempting to enforce repayment of the loan).

Thus, the cases cited by the Defendant do not contradict the Fourth Circuit's holding in *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), rather, they are decided under the definition of "creditor" in 15 U.S.C. § 1692a(4):

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4).

Under the FDCPA, a "creditor" can not be a "debt collector."  Defendant SLS, if not a

division of Defendant Chase, then received the "assignment or transfer of a debt in

default solely for the purpose of facilitating the collection of such debt for another,"15

U.S.C. § 1692a(4), and is not a creditor.

It is well-established that a mortgage loan servicer who acquires a mortgage loan

after it is in default is considered a debt collector under the FDCPA and not entitled to the

exemption of § 1692a(6)(F)(iii) -- the express terms of the FDCPA exceptions explicitly

include, under the term "debt collector," those who collect a debt "in default at the time it

was obtained by such person." *Allen v. Bank of America Corp.,* 2011 U.S. Dist. LEXIS

92383, * 32 (D. Md. 2011) (FDCPA applies to mortgage loan servicer instigation of debt

collection suit) (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536-39 (7th

Cir. 2003); *Shugart v. Ocwen Loan Servicing, LLC*, 747 F.Supp.2d 938, 942-43 (S.D.

Ohio 2010)); *see also Zervos v. Ocwen Loan Servicing, LLC*, 2012 U.S. Dist. LEXIS

44869, *7 (D. Md. 2012); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-8

(6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)

Finally, mortgage loan servicers who treat the mortgage loan *as if it were in

default,* even if it is not actually in default, are also considered debt collectors under the

FDCPA. *Bridge v. Ocwen Fed. Bank*, FSB 681 F.3d 355 (6th Cir. 2012).  The *Bridge*

Court explains, "this interpretation is of the Act is supported by Congress's intent in

passing it" (quoting H.R. Rep. No. 131, at 8: "'This bill also protects people who do not

owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong

person either because of mistaken identity or mistaken facts. This bill will make

collectors behave responsibly towards people with whom they deal.'"). *Id.* at 358.

### C.  Plaintiff Has Properly Pled a Claim Against the Defendant for Violations of the Maryland Consumer Debt Collection Act ("MCDCA")

The Plaintiff has submitted an Amended Complaint to correct the MCDCA

pleading deficiencies raised by SLS in its Motion to Dismiss.  Plaintiff has specified

sufficient facts to show that Defendant SLS is a "collector" within the meaning of the Act

Md. Code Ann., Com. Law § 14-201(b) ("Collector" means a person collecting or

attempting to collect an alleged debt arising out of a consumer transaction") and that

Defendant SLS claimed, attempted, or threatened "to enforce a right with knowledge that

the right does not exist" in violation of  Md. Code Ann., Com. Law § 14-202(8), and

further, the Plaintiff has alleged sufficient facts to show that Defendant SLS acted with

the knowledge that the "debt was invalid, or acted with reckless disregard as to its

validity." Amended Complaint, ¶¶ 135-52; *Fontell v. Hassett*, 891 F. Supp. 2d 739 (D.

Md. 2012).

Plaintiff has further alleged that Defendant SLS, which was engaged directly in

the "business of collecting for another a consumer claim," operated as a collection agency

in Maryland without a license as required by the Maryland Collection Agency Licensing

Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-301(a) & § 7-401(a), which is also a

violation of the MCDCA, Md. Code Ann., Com. Law § 14-202(8). *Kouabo v. Chevy*

*Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004).  Amended Complaint, ¶

159.  Finally, Plaintiff has alleged sufficient facts that Defendant SLS has violated  Md.

Code Ann., Com. Law § 14-202(9),  use of a communication "which simulates legal or

judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not." Amended Complaint, ¶¶ 153-57.

As already discussed, the actions that Plaintiff allege violate the MCDCA took place within the State of Maryland. A plain reading of his first and Amended Complaint show that these claims do not arise under the Note or the Deed of Trust, but rather from the actions Defendant SLS took in Maryland to collect a debt. The Fourth Circuit has been clear that a collector's choice of recovery does not change the essential characteristics of the actions taken. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006). As any violation of the MCDCA is also a violation under the Maryland Consumer Protection Act (MCPA), which provides that violations of the MCDCA constitute "[u]nfair or deceptive trade practices." Md. Code Ann., Com. Law § 13-301(14)(iii), the legislative intent of MCPA applies to the intent of the MCDCA: "This title is intended to provide minimum standards for the protection of consumers in the State." Md. Code Ann., Com. Law § 13-103(a). Plaintiff Lupo is a consumer in the State of Maryland.

**D.  Plaintiff Has Properly Pled a Claim Against the Defendant for Violations of the Maryland Consumer Protection Act ("MCPA")**

The Plaintiff has submitted an Amended Complaint to correct the Maryland Consumer Protection Act ("MCPA") pleading deficiencies raised by SLS in its Motion to Dismiss. The MCPA defines "unfair and deceptive trade practices" to include "any (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" and "(3) Failure to state a material fact if the failure

deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(1) & (3).  Plaintiff

has pled facts sufficient to state a claim under Md. Code Ann., Com. Law § 13-301(1) &

(3) in the Amended Complaint at ¶¶ 150-58 and 165-69.  Further, Plaintiff Lupo has

alleged sufficient facts to show that he relied upon and was caused actual injury by the

deceptive representations and material omissions of the Defendant SLS. Amended

Complaint at ¶¶ 122, 169-170, 177-180; *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp.

2d 788, 796 (D. Md. 2013) ("A consumer relies on a misrepresentation when the

misrepresentation substantially induces the consumer's choice."); *Stewart v. Bierman*, 859

F. Supp. 2d 754, 768 (D. Md. 2012). These violations are in addition to Defendant SLS's

per se violation of MCPA, pursuant to Md. Code Ann., Com. Law § 13-301(14)(iii),

through its violation of the MCDCA. See, e.g., *Ademiluyi v. Pennymac Mortg. Inv. Trust

Holdings I*, LLC, 929 F. Supp. 2d 502, 522-23 (D. Md. 2013);  *Bradshaw v. Hilco

Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011).

 The MCPA explicitly prohibits "any unfair or deceptive trade practices in  the

collection of consumer debts." Md. Code Ann., Com. Law § 13-303(5).  In addition, the

General Assembly of Maryland, in its "Declaration of findings and purpose" of the

MCPA, states:  "The General Assembly concludes . . . that it should take strong

protective and preventive steps to investigate unlawful consumer practices, to assist the

public in obtaining relief from these practices, and *to prevent these practices from

occurring in Maryland.* It is the purpose of this title to accomplish these ends and thereby

maintain the health and welfare of the citizens of the State." Md. Code Ann., Com Law §

13-102(b)(3) ("Purpose") (emphasis added).  The General Assembly specified that the

MCPA " shall be construed and applied liberally to promote its purpose." Md. Code Ann., Com Law § 13-105 ("Construction").

Plaintiff Lupo has properly alleged violations of the MCPA that occurred in Maryland against a Maryland consumer and has further pled the actual damages caused to him by the Defendant SLS's unfair and deceptive trade practices as required by the MCPA, Md. Code Ann., Com. Law § 13-408(a). *See, e.g., Scull v. Groover*, 435 Md. 112, 76 A.3d 1186 (2013).

### E.  Plaintiff Has Properly Pled a Claim Against the Defendant for Violations of the Maryland Mortgage Fraud Protection Act ("MMFPA")

The Maryland Mortgage Fraud Protection Act, enacted in 2008, prohibits mortgage fraud. Md. Code Ann., Real. Prop. § 7-402.  The statute defines "homeowner" as "a record owner of residential real property." § 7-401(1).  Mortgage fraud "means any action by a person made with the intent to defraud" that involves:

(1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(2) Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(3) Knowingly using or facilitating the use of any deliberate misstatement,

misrepresentation, or omission during the mortgage lending process with the

intent that the misstatement, misrepresentation, or omission be relied on by a

mortgage lender, borrower, or any other party to the mortgage lending process;

. . . .

(5) Conspiring to violate any of the provisions of item (1), (2), (3), or (4) of this

subsection;

Md. Code Ann., Real. Prop. § 7-401(d).

The MMFPA further defines the mortgage lending process to include "the solicitation,

application, origination, negotiation, *servicing*, underwriting, signing, closing, and

funding of a mortgage loan." Md. Code Ann., Real. Prop. § 7- 401(e)(2)(i) (emphasis

added). A "mortgage loan" is defined in reference to § 11-501(l) of the Financial

Institutions Article  and means "any loan primarily for personal, family, or household use

that is secured by a mortgage, deed of trust, or other equivalent consensual security

interest on a dwelling or residential real estate on which a dwelling is constructed or

intended to be constructed." Md. Code Ann., Fin. Inst. § 11-501(l), rendering the

servicing of Plaintiff Lupo's mortgage loan covered under the MMFPA.

The MMFPA clearly includes post-closing servicing activities. *Currie v. Wells

Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 800 (D. Md. 2013) (citing *Marchese v.

JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452 (D. Md. Jan. 8, 2013) (quoting *Stovall

v. SunTrust Mortg., Inc.*, Civil Action No. RDB-10- 2836, 2011 U.S. Dist. LEXIS

106137, 2011 WL 4402680, at *10 (D. Md. Sep. 20, 2011)).  As the Court in *Currie*

noted, "analysis of MCPA claims and MMFPA claims may overlap." *Id.* (finding

Plaintiffs sufficiently pled a claim under MCPA and MMFPA for, *inter alia*, actions

amounting to a "churning" of their loan modification agreements whereby Defendant

"managed to "run up late fees and other default related charges and strip cash" from the

Plaintiffs prior to foreclosure).

Further, and as Defendant SLS concedes, venue is proper for violations of the

MMFPA "in the county in which an act was performed in furtherance of the violation."

Md. Code Ann., Real. Prop. § 7-403. As already discussed, all the post-closing servicing

activities alleged to violate the MMFPA occurred within the D.C. Metropolitan area,

primarily within Montgomery County, Maryland.  Amended Complaint, ¶¶ 1-11.

### F.  Plaintiff Has Properly Pled a Claim Against the Defendant for Tortious Interference with Economic Relations (Amended from "Tortious Interference with Employment Contract")

The Plaintiff has submitted an Amended Complaint to correct the pleading

deficiencies raised by SLS in its Motion to Dismiss the claim for Tortious Interference

with Employment Contract and re-pled it as "Tortious Interference with Economic

Relations" Amended Complaint ¶¶, Count 24.  Maryland recognizes the tort action for

wrongful interference with contractual or business relationships in two general forms:

"inducing the breach of an existing contract and, more broadly, maliciously or wrongfully

interfering with economic relationships . . . ." *Natural Design, Inc. v. Rouse Co.*, 302 Md.

47, 69, 485 A.2d 663, 674 (1984).  Maryland has adopted  § 766 of the *Restatement*

*(Second) of Torts,* which provides:

A. One who intentionally and improperly interferes with the performance of a

contract (except a contract to marry) between another and a third person by

preventing the other from performing the contract or causing his performance to

be more expensive or burdensome, is subject to liability to the other for the

pecuniary loss resulting to him.

B. One who intentionally and improperly interferes with another's prospective

contractual relation (except a contract to marry) is subject to liability to the other

for the pecuniary harm resulting from the loss of the benefits of the relation,

whether the interference consists of

> (a) inducing or otherwise causing a third person not to enter into or
>
> continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective
>
> relation.

*Restatement (Second) of Torts* § 788

As *Natural Design* explains, "The principle underlying both forms of the tort is the same:

under certain circumstances, a party is liable if he interferes with and damages another in

his business or occupation. The two types of actions differ in the limits on the right to

interfere which will be recognized in either case. Thus, where a contract between two

parties exists, the circumstances in which a third party has a right to interfere with the

performance of that contract are more narrowly restricted. A broader right to interfere

with economic relations exists where no contract or a contract terminable at will is

involved." 302 Md. at 69-70, 485 A.2d at 674; *Lake Shore Investors v. Rite Aid Corp.*, 67

Md. App. 743, 753; 509 A.2d 727, 732 (Md. Ct. Spec. 1986).

In addition, and contrary to Defendant SLS's assertions, the Fourth Circuit has

held in the context of a tort for wrongful interference with business relations that "proof

of breach of contract is not an essential element of the tort." *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 889 (4th Cir. 1992) (citing *Lake Shore Investors, supra* at 752, 509 A.2d at 729). For one to recover for tortious interference with contractual or economic relations, the interference must have been wrongful or unlawful, the interference must be the cause-in-fact of the injury for which damages are requested, and the damages sought must be a natural, proximate, and direct effect of the tortious misconduct. *Medical Mutual Liability Society of Maryland v. B. Dixon Evander and Associates, Inc.*, 339 Md. 41; 660 A.2d 433 (1995) (wrongful interference with business relationships). In *Medical Mutual*, the Court held that defamation would be a sufficiently wrongful or unlawful act to satisfy the element of wrongful or unlawful interference. *Id.* at 56-57, 660 A.2d at 440-441 (evidence of causation could be satisfied by defamatory language of letter) *See also Alexander v. Evander*, 336 Md. 635, 657, 650 A.2d 260, 271 (1994) ("wrongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships").

Tortious interference with economic relations also includes interference with at-will employment. The elements of the tort are as follows: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[] in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting. *Kramer v. Mayor of Baltimore*, 124 Md. App. 616, 637-38; 723 A.2d 529, 540 (Md. Ct. Spec. 1998). Wrongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its

effect on the plaintiff's business relationships. The essential element is that the interference be by "by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 437 (D. Md. 2012). Wrongful or unlawful acts include common law torts and "violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Kramer, supra*, citing *Alexander & Alexander, Inc. v. B. Dixon Evander Assocs., Inc.*, 336 Md. 635, 657, 650 A.2d 260 (1994).  A cause of action for tortious interference with economic relations extends to terminable at will relationships. *Blondell v. Littlepage*, 413 Md. 96, 991 A.2d 80, 97 (Md. 2010);. *Kramer v. Mayor of Baltimore*, 124 Md. App. 616, 637, 723 A.2d 529, 539 (Md. Ct. Spec. App. 1999); *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 437 (D. Md. 2012).

Plaintiff has alleged sufficient facts to show a claim for tortious interference with economic relations, Amended Complaint ¶¶ 25, 80-81, 127-151, 160, 162, 163-64, 169, 174-75.

### G.  Plaintiff Has Properly Pled a Claim Against the Defendant SLS for Unjust Enrichment

The Plaintiff has submitted an Amended Complaint to correct the pleading deficiencies raised by SLS in its Motion to Dismiss the claim for Unjust Enrichment. Plaintiff pleads unjust enrichment and requests that the real estate property securing the Deed of Trust be placed in trust for the benefit and use of the Plaintiff.  First Complaint, Count 17 and Request for Relief (d), Amended Complaint, Count 25 and Request for Relief (d).  Maryland's choice of law for an unjust enrichment claim follows the choice of law for a contract claim. *See Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md.

App. 476, 490-92, 790 A.2d 720, 728-29 (2002) (stating that *lex loci contractus*, "the place the contract was made," determines choice of law in contract disputes and unjust enrichment claims). And, "[c]ontracts relating to the sale of realty are generally governed by the law of the jurisdiction in which the property is located." *Traylor v. Grafton*, 273 Md. 649, 660, 332 A.2d 651, 659 (1975).

Texas recognizes a separate cause of action for unjust enrichment. *See* George P. Roach, *Unjust Enrichment in Texas: Is It a Floor Wax or a Dessert Topping?*, 65 Baylor L. Rev. 153, 253 (2013) ("Texas has a cause of action for unjust enrichment but it does not resemble traditional unjust enrichment in equity and therefore Texas has a weak safety net."). "The simplest case of unjust enrichment liability is the mistaken payment. The plaintiff, thinking she owes the defendant $100, pays that amount, but in fact she does not owe anything. But the transfer takes effect as such, so that the defendant becomes the owner of the money." Lionel Smith, *Restitution: The Heart of Corrective Justice*, 79 Texas L. Rev. 2115, 2141 (2001) (footnote omitted). Furthermore,

> Unjust enrichment includes both a material gain by the defendant and a material loss by the plaintiff. Moreover, the loss and gain do not come together by random chance. They are two sides of the same coin—that coin being a transfer of wealth from plaintiff to defendant. There is a nexus of exchange between the parties.
>
> *Id.* (footnote omitted).

Unjust enrichment is an implied-contract theory stating one should make restitution when it would be unjust to retain benefits received. *Walker v. Cotter Props., Inc.,* 181 S.W.3d 895, 900 (Tex. App. Dallas 2006, no pet.). Unjust enrichment is "based upon the promise

implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740 (Tex. 2005). Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992).

Plaintiff has amended the Count for Unjust Enrichment to specify that the Defendant SLS has obtained a benefit from the Plaintiff through fraud or the taking of undue advantage of the Plaintiff. Amended Complaint, Count 25. Plaintiff submits that he has alleged sufficient facts to show fraud or the taking of undue advantage of the Plaintiff, Amended Complaint, ¶¶ 129-59, 165-69. In addition to the benefit the Defendant receives through taking Plaintiff's residential real property, the Defendant SLS has taken late fees, property inspection fees, and legal fees from the Plaintiff, and they will also take from the Plaintiff the management fees and further attorney fees for the foreclosure process. Amended Complaint, ¶¶ 177-81, 20-21. Plaintiff has also amended the Complaint to show that the property is worth $35,000 more than the balance of the mortgage loan at issue. Amended Complaint, ¶ 181   Defendant SLS maintains that the Plaintiff is alleging a future unjust enrichment claim in reference to the benefit to Defendant SLS following foreclosure. Given that the foreclosure sale was scheduled for March 4, 2014, and Plaintiff has been charged legal fees twice, he submits that his claim is not future-oriented. Amended Complaint, ¶¶ 170-73. Given that the claim itself and the remedy requested is equitable in nature, the Plaintiff asserts that it has been properly pled in the context of the facts presented.

## IV. CONCLUSION

For the aforementioned reasons, the Plaintiff respectfully requests that the Court deny the Defendant SLS's Motion to Dismiss in its entirety.

Respectfully Submitted,

Louis M. Lupo, Pro Se
545 Elmcroft Boulevard, Apt 10213
Rockville, Maryland 20850
Telephone: 202-290-4379
louis.lupo@yahoo.com

29