```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

                                  :
LOUIS M. LUPO
                                  :

     v.                           :   Civil Action No. DKC 14-0475

                                  :
JPMORGAN CHASE BANK, N.A.,
et al.                            :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion by Specialized Loan Servicing, LLC to dismiss or to transfer the action to the United States District Court for the Northern District of Texas. (ECF No. 19).[1] The issues have been briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the motion to dismiss based on improper venue or transfer based on *forum non conveniens* will be denied.

**I.  Background**

   **A.  Factual Background[2]**

   Since 2011, Plaintiff has lived in Maryland. (ECF No. 18 ¶ 5). He is employed by a federal contractor, who stations him at

---

[1] SLS's first motion to transfer or dismiss (ECF No. 7), was directed at Plaintiff's initial complaint and was denied as moot only because Plaintiff filed an amended complaint (ECF No. 18). There was no merits based finding on either aspect of the motion.

[2] The full factual background describing the parties' dispute will be provided in a subsequent opinion. Only the facts relevant to the current motion will be provided here.

various federal agencies throughout the Washington D.C. metropolitan area. (*Id.* ¶¶ 2-3). His job requires his continuous presence in the D.C. area. (*Id.* ¶ 4). Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association that does business in Maryland, with its principal place of business in Ohio. (ECF No. 1-1, at 2 and 1-2, at 2). Defendant Specialized Loan Servicing, LLC ("SLS") is a mortgage servicing corporation with its principal place of business in Colorado. (ECF No. 18 ¶ 13).

On December 20, 2007, Plaintiff executed a 30-year fixed-rate promissory note (the "Note") payable to the lender, Chase. (*Id.* ¶ 31). On the same day, Plaintiff also executed a deed of trust ("DOT") to secure repayment of the Note with a lien against his property located in Richland, Texas (the "Property"). (*Id.* ¶ 33). The DOT specifies that it is "governed by federal law and the law of the jurisdiction in which the Property is located." (*Id.* ¶ 13).

Plaintiff alleges that, since the inception of his mortgage loan, Chase, as his loan servicer, has "miscalculated and overcharged for escrow" on his account. (*Id.* ¶ 38). Although in the past Plaintiff was able to resolve these errors, Plaintiff alleges that in 2013 Chase made an error that he has

2

been unable to resolve. Specifically, Plaintiff alleges that on February 9, 2013, Chase "erroneously reported to Equifax that [he] was 30 days late on his November 30, 2012 mortgage loan payment." (*Id.* ¶ 46). Prior to this time Plaintiff's credit history was perfect. (*Id.* ¶ 43). The February 9, 2013 report "stated that Plaintiff was $4,000 delinquent for the month of November 2012[,]" but Plaintiff alleges that his monthly mortgage payments only averaged $1,502. (*Id.* ¶¶ 47-48). Following the release of the February 9, 2013 credit report, Plaintiff called Chase numerous times and asked that it correct his credit report and recalculate his escrow charges, which he alleges were inaccurate. (*Id.* ¶¶ 49, 53-54). Plaintiff also faxed and mailed Chase written requests to investigate the credit reporting error, recalculate his escrow payments, and reconcile his mortgage loan account, and with these requests he provided supporting documentation that his loan payments were not in arrears. (*Id.* ¶¶ 79, 100). During this time period of February 2013 until May 2013, Chase through its telephone line representatives and through the letters it sent Plaintiff, informed Plaintiff that his loan payments were overdue, that Chase was a debt collector, and that it was attempting to collect a debt. (*Id.* ¶¶ 67, 90, 96, 101, 105, 114, 117). Chase

3

refused to repair Plaintiff's credit report until he made various payments, all of which Plaintiff alleges were not owed to Chase. (*Id.* ¶¶ 91, 97-99).

On May 31, 2013, Chase mailed Plaintiff a letter informing him that his mortgage loan had been transferred and assigned to SLS effective June 17, 2013, and that Chase could no longer accept payments on his mortgage loan. (*Id.* ¶ 121). Plaintiff called SLS and asked it to investigate his loan payment history, because he believed that Chase's reporting showing him in arrears was inaccurate. (*Id.* ¶ 137). Plaintiff sent documentation to SLS on July 1 and August 21, 2013, verifying his proof of payment for the previous twenty months, and requesting that SLS investigate his loan history, recalculate his escrow payments, reconcile his account, and correct his credit report. (*Id.* ¶¶ 142-43). SLS mailed Plaintiff a letter on July 11, 2013, stating that he was in default as he had failed to make loan payments since April 2013 and that his loan repayment schedule was being accelerated. (*Id.* ¶¶ 144-46). Again on August 14, 2013, SLS sent Plaintiff a letter informing him, *inter alia*, that he must make a payment on his loan by August 28, 2013 in order to stop the foreclosure process. (*Id.* ¶¶ 153-57).

As of January 5, 2014, Defendants Chase and SLS have not performed the investigation and reconciliation requested by Plaintiff, nor have they corrected his credit report. (*Id.* ¶¶ 160-61). Plaintiff's employment requires that he hold security clearances, and the clearances require the holder to maintain financial integrity. (*Id.* ¶¶ 41-42). During his dispute with Chase and SLS, Plaintiff was being vetted for an employment position that required additional security clearances. (*Id.* ¶ 44). Due to the credit reporting by defendants, Plaintiff was denied a security clearance and access to his job site. (*Id.* ¶¶ 163-64). In addition, several of Plaintiff's credit card accounts were closed. (*Id.* ¶ 162). Moreover, on February 4, 2014, Plaintiff was informed by Hughes, Watters & Askanase, LLP, on behalf of SLS, that the Texas Property would be foreclosed on and sold in a non-judicial sale on March 4, 2014. (*Id.* ¶ 170).

  **B.** **Procedural Background**

  On February 19, 2014, Plaintiff Luis M. Lupo, proceeding *pro se*, filed his original complaint against Defendants Chase and SLS. (ECF No. 1). Plaintiff filed an amended twenty-eight count complaint alleging multiple violations of the Real Estate Settlement Procedures Act ("RESPA"), Fair Debt Collection Practices Act ("FDCPA"), Fair Credit Reporting Act ("FCRA"), and

various Maryland consumer protection and mortgage fraud laws, as well as claims for breach of contract, defamation, tortious interference with economic relations, and unjust enrichment. (*Id.* at 17-31).  Plaintiff has requested declaratory relief, damages, and costs.  (*Id.* at 31-32).  Plaintiff also requests that Defendants be enjoined from selling the Texas Property and from continuing to violate RESPA and FDCPA, and that Defendants be required to correct his credit report.  If there be no adequate legal remedy, Plaintiff asks that a constructive trust be placed on his Property in Texas.  (*Id.* at 31-32).

Defendant SLS moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(3) or transfer this action on the ground of *forum non conveniens* to the United States District Court for the Northern District of Texas on April 16, 2014.[3]  (ECF No. 19). Plaintiff opposed this motion on May 6, 2014 (ECF No. 22), and SLS replied on May 22, 2014 (ECF No. 23).

---

[3] Under Fed.R.Civ.P. 12(b)(6), SLS also moved to dismiss all counts directed towards it for failure to state a claim.  Also pending are a motion for summary judgment filed by Defendant Chase on October 30, 2014 (ECF No. 24), and a motion filed by Plaintiff requesting that the court defer its decision on Chase's summary judgment motion until disposition of SLS's motion to dismiss or pending additional discovery pursuant to Fed.R.Civ.P. 56(d).  (ECF No. 29).  SLS's 12(b)(6) motion, Chase's summary judgment motion, and Plaintiff's motion will be resolved in a separate memorandum opinion and order.

**II. Motion to Dismiss or Transfer**

Defendant SLS moved to dismiss this action for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a).

**1. Dismissal Due to Improper Venue**

Plaintiff asserts that venue is proper in Maryland because "the claimed violations occurred in this district." (ECF No. 18 ¶ 30). SLS disputes this assertion, contending that "Plaintiff's complaint arises from events occurring in Texas relating to his real property located in Texas." (ECF No. 19, at 1). SLS also contends that venue is not proper in Maryland because Plaintiff's requested relief of a constructive trust requires the court to have *in rem* jurisdiction over Plaintiff's Property in Texas, which the court does not have.

When venue is challenged by a motion to dismiss, the plaintiff must establish that venue is proper. *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F.Supp.2d 468, 471 (D.Md. 2002) (*citing Bartholomew v. Virginia Chiropractors Association*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982). "[I]n a case involving [] multiple claims, the plaintiff bears the burden of showing

7

that venue is appropriate as to each claim[.]" *Hickey v. St. Martin's Press, Inc.*, 978 F.Supp. 230, 240 (D.Md. 1997) (*citing VDI Technologies v. Price,* 781 F.Supp. 85, 92 (D.N.H. 1991); *Jarrett v. North Carolina,* 868 F.Supp. 155, 158 (D.S.C. 1994)). Furthermore, as noted by Judge Bennett in *Silo Point II LLC v. Suffolk Const. Co.,* 578 F.Supp.2d 807, 809 (D.Md. 2008), in considering a motion to dismiss:

> [u]nder Rule 12(b)(3) the court is allowed to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion. [*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 550 (4th Cir. 2006)]. In addition, when resolving a motion to dismiss under Rule 12(b)(3), "'the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis.'" *Id.* at 549 (*quoting Argueta v. Banco Mexicano,* 87 F.3d 320, 324 (9th Cir. 1996)). Nevertheless, "[i]n deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Sun Dun, Inc. of Washington v. Coca-Cola Co.,* 740 F.Supp. 381, 385 (D.Md. 1990) (*quoting Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456, 457 (4th Cir. 1983)).

The general rule for venue is provided in 28 U.S.C. § 1391(b), which states that:

> A civil action may be brought in —
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to personal jurisdiction with respect to such action.

The motion to dismiss for improper venue will be denied because venue is proper in Maryland. Distilled to its essence, Plaintiff's complaint derives from his allegation that he has always been current in making mortgage and escrow payments on his 2007 mortgage loan to Chase and SLS. At the time the Note and DOT were executed in 2007, it does not appear that Plaintiff had any connection to Maryland. Plaintiff moved to Maryland in 2011. The current dispute involving Defendants' debt collection practices, and the state of Plaintiff's mortgage payment account arose in February 2013, when Chase allegedly made an erroneous credit report regarding Plaintiff's credit. Once this dispute arose, all correspondence by mail or fax between Plaintiff and Defendants were sent to or from him in Montgomery County,

Maryland, and telephone calls were to or from him on his cell phone "within the DC Metropolitan Area, most commonly Montgomery County, Maryland." (ECF No. 18 ¶ 10). Although Chase and Plaintiff's original negotiations and execution of the Note and DOT may have occurred in Texas, Plaintiff's claims in the present action do not relate to the parties' conduct in negotiating and executing these documents. Plaintiff's causes of action — rooted in contract law, tort law, equity, and federal and Maryland statutes governing debt collection and credit reporting practices — arose in 2013 from conduct occurring in Maryland (where Plaintiff resides and works), and presumably in Ohio and Colorado (at Defendants' principal places of business) during the parties' dispute over Plaintiff's loan repayments. Once Plaintiff moved to Maryland in 2011, communications with Defendants, including those that allegedly constitute RESPA requests and fraudulent debt collection practices in violation of the FDCPA, occurred here.

SLS asserts that venue is improper in Maryland because Plaintiff's Property that secures his mortgage loan is in Texas, and the court must have *in rem* jurisdiction over the Property in order to accord Plaintiff part of his requested relief. First, Plaintiff has requested numerous forms of relief, including

declaratory, injunctive, damages, and equitable relief, all of which the court is capable of granting.  The part of Plaintiff's requested relief that directly affects the Property — an injunction and a constructive trust[4] — is de minimis and if it cannot be granted, it will be Plaintiff's loss, not Defendants'. *See Yavuz v. 61 MM, Ltd.,* 576 F.3d 1166, 1175-77 (10th Cir. 2009) (finding that the "the lack of a particular remedy or cause of action in the alternative forum [to which the case was being transferred did] not necessarily render that venue inadequate").

---

[4] Injunctive relief, even if it relates to real property, is something that is within the court's power to award because it has *in personam* jurisdiction over the parties.  *See R.M.S. Titanic, Inc. v. Haver,* 171 F.3d 943, 957 (4th Cir. 1999) ("Injunctive relief [] can only be granted in an *in personam* action commenced by one party against another[;] . . . [b]y contrast, injunctive relief ordered in an *in rem* action would be meaningless because things or property cannot be enjoined to do anything.").  Plaintiff has also asked that if there is no adequate legal remedy, that his Property be placed in a constructive trust, which is "a type of equitable remedy, and not a cause of action."  *Stewart Title Guar. Co. v. Sanford Title Servs., LLC,* No. ELH-11-620, 2011 WL 2681196, at *4 (D.Md. July 8, 2011).  Even if this court cannot create a constructive trust on the Property in Texas, it may still be able to afford Plaintiff the relief he requests through other means.  *See In re Great Gulfcan Energy Texas, Inc.,* 488 B.R. 898, 911 (Bankr. S.D.Tx. 2013) ("[W]here a court lacks in rem jurisdiction over the real property in question, a court may exercise personal jurisdiction over a party in order to transfer title to the same property.  The transitory action rule therefore essentially permits a court to coerce a litigant to do something it is powerless to do itself:  transfer title of real property located outside of the state in which the court sits.").

The United States Court of Appeals for the Tenth Circuit reviewed a similar issue in *Yavuz,* 576 F.3d at 1175-77, a case in which a plaintiff brought numerous claims and requested numerous forms of relief (one of which was a constructive trust) relating to a business relationship with defendants that had gone bad. Plaintiff filed suit in Oklahoma because defendants owned real property in Oklahoma, and plaintiff owned a small share in this property. Plaintiff argued that "his claim seeking to impose a constructive trust on [defendants' property in Oklahoma] is '*in rem* and exclusive venue lies where the land is located.'" *Id.* at 1175. The United States District Court for the Northern District of Oklahoma transferred the case to Switzerland on *forum non conveniens* grounds, and the plaintiff challenged this transfer, arguing that because the Switzerland court "would have no jurisdiction over the [Oklahoma] property" it was an inadequate venue. The Tenth Circuit, rejected the plaintiff's arguments, stating that:

> [Plaintiff] is conflating a possible remedy — a constructive trust on the defendants' real property — with the nature of his lawsuit — a tort and contract suit arising out of a failed business relationship between the defendants and him.

12

> [Plaintiff] creatively attempts to fashion his claims against the defendants as arising out of a dispute over the [Oklahoma] property — claims which could not be brought in Switzerland.

The Tenth Circuit also rejected plaintiff's narrow view of his claims, construing them instead as a failed business relationship arising in tort and contract law. The court also noted that the plaintiff's constructive trust "claim" "conflates a potential remedy with the substantive cause of action. [] [T]he purpose of a constructive trust is to remedy fraudulent conduct or prevent unjust enrichment[.]" *Id.* at 1176. The court went on to find that:

> when the case is construed as a contract and tort dispute, the lack of a particular remedy or cause of action in the alternative Swiss forum does not necessarily render that venue inadequate. . . .
>
> [T]o the extent any monetary damages may be insufficient to make [plaintiff] whole, [plaintiff] is not without recourse. Nothing prevents [plaintiff] after a successful suit in Swiss courts, from enforcing his Swiss judgment in the United States by seeking a constructive trust or an attachment of the defendants' property, such as the [Oklahoma] property.

Similar to the plaintiff in *Yavuz,* SLS has argued that Texas is the only proper venue because Plaintiff is seeking a constructive trust on his property in Texas. The parties'

13

dispute, however, is not a property dispute meant to settle title to Plaintiff's Texas Property; rather, it is a dispute over a mortgage loan and lender collection practices that are not directly tied to the Texas forum because the disputed conduct occurred outside of Texas.  Moreover, because a constructive trust is only one remedy sought by Plaintiff and Plaintiff's other requested relief is available in Maryland, Maryland is a proper venue.

SLS's argument regarding the necessity that the court have *in rem* jurisdiction over the Property appears to conflate venue and jurisdiction.  The cases SLS cites to support its argument are inapposite to the present case, as they involve instances where the court had only *in rem* jurisdiction.[5]  *See, e.g., R.M.S.*

---

[5] In *R.M.S. Titanic*, 171 F.3d at 957, the United States Court of Appeals for the Fourth Circuit noted that:

> [a]ctions *in rem* are prosecuted to enforce a right to things, whereas actions *in personam* are those in which an individual is charged personally.  Because *in rem* actions adjudicate rights in specific property before the court, judgments in them operate against anyone in the world claiming against that property.  Consequently, judgments in *in rem* actions affect only the property before the court and possess and carry no *in personam* significance, other than to foreclose any person from later seeking rights in the property subject to the *in rem*

14

*Titanic, Inc.*, 171 F.3d at 957 (noting the differences between *in rem* and *in personam* jurisdiction and that the court was proceeding *in rem* to adjudicate the rights to the Titanic wreckage). Here, the court has *in personam* jurisdiction over the parties, therefore, *in rem* jurisdiction over the Property is not necessary in order to determine the parties' rights with respect to the Property. *Id.* ("*In personam* actions, [] adjudicate the rights and obligations of individual persons or entities.").

### 2. Transfer for Convenience

In the alternative, SLS argues that the court should transfer this case on the ground of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). According to SLS, adjudicating this dispute in Texas will be more convenient for the parties and witnesses, and is in the interest of justice because the Plaintiff's Property is located in Texas and the parties Note and DOT is governed by Texas law.

---

>     action. The court's authority to exercise *in rem* jurisdiction does not carry with it a concomitant, derivative power to enter ancillary *in personam* orders.

*Id.* (alteration in original)(internal citations and quotation marks omitted).

15

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "To prevail on a motion to transfer venue under § 1404, 'the defendant must show by a preponderance of the evidence' that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co., Inc.,* 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal citation omitted); *see also Lynch v. Vanderhoef Builders,* 237 F.Supp.2d 615, 617 (D.Md. 2002).  In order to satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship he "would suffer if the case were heard in the plaintiff's chosen forum."  *Dow v. Jones,* 232 F.Supp.2d 491, 499 (D.Md. 2002) (*citing Helsel,* 198 F.Supp.2d at 712).  Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion to dismiss or to transfer pursuant to § 1404(a).  *See Dow,* 232 F.Supp.2d at 499; *Helsel,* 198 F.Supp.2d at 712.

In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific

16

factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The host of convenience factors a court should consider include:

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Brown v. Stallworth*, 235 F.Supp.2d 453, 456 (D.Md. 2002) (*quoting Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 622 n.4 (D.Md. 1998) (internal citations omitted)). The decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Ctr., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991).

First, "deference is generally given to a plaintiff's choice of forum." *CoStar Realty Info., Inc. v. Meissner*, 604

17

F.Supp.2d 757, 773 (D.Md. 2009) (*citing Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981)).  SLS argues that Plaintiff's forum choice should not be given deference because it is not his home forum.  Despite the fact that Plaintiff owns property in Texas, Plaintiff has lived in Maryland since 2011 and significant portions of the dispute occurred here, thus, his forum choice is entitled to deference.  Second, SLS has not met its burden of showing that Maryland would be an inconvenient forum, or that Texas would be more convenient, especially when none of the parties reside there.  Its mere assertions of inconvenience are not enough; Defendant needed to submit affidavits from its proposed witnesses, attesting to the hardships they would face in having to appear in Maryland.  Moreover, Defendant acknowledges that Plaintiff lives and works in Maryland and that Plaintiff's proposed witness is located in Maryland.  (ECF No. 19-1, at 10-11 n.8).  Third, Maryland has a legitimate interest in protecting consumers residing in the state.  Fourth, although Texas law and federal law may govern the Note and DOT, Plaintiff's claims are based primarily on Defendants' violations of federal laws and Maryland consumer protections laws, which makes this forum an appropriate venue

18

for resolving this dispute.  Accordingly, SLS's request for a transfer of venue will be denied.

**III. Conclusion**

For the foregoing reasons, the motion of Defendant SLS to dismiss this case due to improper venue or to transfer this case to Texas is denied.  A separate order will follow.

                                                /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge