**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| **Louis M. Lupo** | : | |
| Plaintiff | : | |
| **v.** | : | **Case No.: 8:14-cv-00475-DKC** |
| **JPMorgan Chase Bank, N.A.,** *et al.* | : | |
| Defendants | : | |

---

**MEMORANDUM**

---

One of the Defendants, Specialized Loan Servicing, LLC ("SLS"), by and through its attorneys, Aaron D. Neal, and McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., submits this Memorandum in support of its Motion for Summary Judgment, and says:

**I.      OVERVIEW.**

This is a relatively simple case.  Plaintiff took out a mortgage against his former property in Texas.  That loan required Plaintiff to make monthly escrow payments towards taxes and insurance along with his monthly principal and interest payments.  In 2012, the property taxes owed on that property more than doubled, causing a corresponding increase in the monthly escrow payment.  Plaintiff refused to pay the increased escrow payment and fell into default. Now, Plaintiff brings a number of claims against SLS, a subsequent servicer of his loan, based on his claim that the escrow payment was improperly calculated.  For the same reason that JPMorgan Chase was granted summary judgment, SLS is entitled to summary judgment. Plaintiff's claims are without factual basis and SLS is entitled to judgment as a matter of law.

## II.    MATERIAL FACTS THAT ARE NOT GENUINELY IN DISPUTE.

Plaintiff's former home is located at 7908 Hunter Lane, North Richland Hills, Texas 76180 (the "Property"). ECF No. 18 at ¶31.  In 2007, Plaintiff executed a promissory note (the "Subject Note") payable to JPMorgan Chase Bank, N.A. ("Chase"). Id.  At the same time, Plaintiff executed a deed of trust (the "Subject DOT") securing repayment of the Subject Note with a lien against the Property. Id. at ¶33.  Plaintiff made timely payments until November 2012. Id. at ¶37.  On or about May 31, 2013, Plaintiff received a notice from Chase that as of June 17, 2013, the servicing of the subject loan Subject Loan[1] was being transferred to SLS. Id. at ¶121.  On or about June 20, 2013, SLS sent Plaintiff a notice advising him of the transfer of the servicing of the Subject Loan.  Prior to the servicing transfer, Plaintiff had some difficulties with making payments to Chase. Id. at ¶38-120.  Those difficulties arose because Plaintiff's property taxes more than doubled from 2010 to 2011, and Chase recalculated the amount that Plaintiff had to pay into escrow with each mortgage payment to reflect that change. Id. at ¶69-71; ECF No. 24-2.

Prior to the servicing transfer to SLS, the real estate taxes owed on the Property increased exponentially, from $2,279.73 per year in 2011 to $4,982.17 per year in 2012. ECF No. 24-6 at p.64-67 (Bessas Affidavit); ECF No. 19-3 at p.1.  That increase, along with an increase in the hazard insurance, caused a corresponding increase in Plaintiff's monthly mortgage obligation. Id. at p. 58 and 64.  Beginning in May 2012, Plaintiff stopped making the mortgage payments in the required amount, despite the fact that he had a legal obligation to do so even if he disputed the amount owed. ECF No. 24-6.

---

[1] The term "Subject Loan" shall be defined as the loan agreement consisting of the terms in the Subject Note and Subject DOT.

2

Effective June 17, 2013, servicing of the Loan was transferred to SLS. Exhibit 1 – SLS Affidavit at ¶4; Exhibit 4 – Notice of Assignment.  At the time of the transfer, the Loan was due for the April 1, 2013 payment and was in default. Exhibit 1 at ¶5.  On June 20, 2013, SLS mailed Plaintiff a "Notice of Assignment, Sale, or Transfer of Servicing Rights" that explained that the servicing of the Loan had been transferred to SLS. ECF No. 18 at ¶129; Exhibit 1 at ¶9; Exhibit 4.  The Notice of Assignment included the following clause:

### ABOUT YOUR RIGHTS UNDER "RESPA"

You should be aware of your rights as a consumer with a home loan.  These are explained in detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA)(12 U.S.C. 2605).  Some of the highlights are as follows:

If during the 60 days after your first payment is due to Specialized Loan Servicing, you mistakenly send your payment to Jpmorgan Chase Bank, Na, Specialized Loan Servicing is not allowed to charge you a late fee, or to report you to the credit bureaus during the 60 day period stated above.

If you send a "qualified written request" to Specialized Loan Servicing concerning the servicing of your loan, we must provide you with a written acknowledgement within 5 Business Days of the receipt of your request.  A "qualified written request" is a written correspondence which includes your name and account number and your reasons for the request.  Writing a note on your payment coupon or envelope is not considered a "qualified written request".  Inquiries or information sent to us via our website is not considered a "qualified written request".  Qualified written requests must be sent to:

Attn: Customer Care Support
P.O. Box 636005
Littleton, CO 80163-6005

Exhibit 4 – Notice of Assignment

Plaintiff claims to have sent two facsimiles to SLS on or about July 1, 2013 enclosing payment information and requesting recalculation of the escrow account. ECF No. 18 at ¶143; Exhibit 5 – July 1, 2013 Faxes.  Those faxes contain partial Chase payment histories along with a handwritten cover sheet stating "Proof of Payment" and "Rejected ACH due to inaccurate

payment history. Proof of Payments & ACH enclosed past 20 months." Id.  On September 6, 2013, SLS sent Plaintiff a letter advising that his faxes were not qualified written requests under RESPA. Id. at ¶148; Exhibit 7.  SLS further advised that the July 2013 payments made by Plaintiff to Chase had been transferred to SLS and applied to his account based on the proper monthly mortgage payment. Exhibit 7 at p.2.

SLS has not received any payments on the Loan since the July 2013 payments that were transferred from Chase and Plaintiff has never made any payments directly to SLS. Exhibit 1. Plaintiff has not offered or attempted to make the past due payments to SLS. Exhibit 1.  SLS is not required to accept partial payments and thus refused to do so. Exhibit 2 – Deed of Trust at p.3, ¶1.  Rather, Plaintiff has maintained that he was not in default and that he is not obligated to pay any arrearage. Exhibit 6 – August 21, 2013 letter.  SLS offered Plaintiff the opportunity to begin a trial modification under the federal HAMP program. Exhibits 8 & 9 – HAMP Solicitations.  The forms attached to Exhibits 8 and 9 are the HAMP mandated modification forms. Exhibit 1 at ¶13-16.  Plaintiff did not advise SLS that he had accepted either of the trial modifications. Exhibit 1 at ¶17.  On July 11, 2013, SLS sent notice of default and acceleration to Plaintiff. Exhibit 10 – Notice of Default.  SLS has consistently and accurately reported to the credit bureaus that Plaintiff is in default of his mortgage obligations. Exhibit 1 at ¶23.  The Property has since been sold at foreclosure auction to Federal Home Loan Mortgage Corporation. See Exhibit 10.  Federal Home Loan Mortgage Corporation took possession of the Property through judicial process in Tarrant County, Texas, with the consent of Plaintiff. Id.

III.    **CLAIMS FOR RELIEF.**

Plaintiff originally brought 28 claims for relief in the Complaint.  Of those counts, only Counts 1-12, 14-20, and 23-28 make any reference to SLS.  Id.  With respect to the counts directed at SLS, the following counts have been dismissed: 2-4[2], 5-8, 9-12, and 23-25.  That leaves the following active counts: 1, 14-20, and 26-28.  This motion addresses each of the remaining claims.

IV.    **STANDARD OF REVIEW.**

SLS adopts and incorporates by reference the standard section of the Court's Memorandum Opinion. *See* ECF No. 42 at p.12-13.

III.    **ARGUMENT.**

A.    PLAINTIFF CANNOT PLEAD A RESPA CLAIM AGAINST SLS.

Count One of the Complaint attempts to plead a claim under the Real Estate Settlement Procedures Act ("RESPA") for failure to acknowledge a qualified written request from Plaintiff. The sole remaining qualified written request ("QWR") through which Plaintiff claims a violation of RESPA's acknowledgement deadline is a July 1, 2013 facsimile that Plaintiff claims to have sent to SLS.  As was the case with the alleged QWRs that Plaintiff claims to have sent to Chase, Plaintiff's fax to SLS was not a QWR because it was not sent to the separate and exclusive address provided for qualified written requests. ECF No.42 at p.15-17; Roth v. CitiMortgage, Inc., 756 F.3d 178, 181 (2nd Cir. 2014); Peters v. Bank of America, N.A., 2015 WL 1259417 (E.D. Va. March 18, 2015) (even if a servicer treats a correspondence like a QWR, a non-conforming correspondence sent to the wrong address is not transformed into a QWR).  SLS

---

[2] Counts 1-4 were based on Chase and SLS's alleged failure to acknowledge his qualified written requests.  The Court dismissed all but one of those claims, leaving a single failure to acknowledge claim relating to Plaintiff's July 1 fax. ECF No.42 at p.52.  For the sake of simplicity, SLS will refer to the remaining count as "Count 1".

designated a specific, exclusive address and department for the delivery of QWRs. Exhibit 1. Plaintiff acknowledges receipt of the notice that identified the exclusive QWR address. ECF No. 18 at ¶143. Instead of sending his correspondence via mail to the designated address and department, Plaintiff sent his correspondence to someone named "Portia" via facsimile. Because Plaintiff's fax was not a qualified written request, SLS's corresponding RESPA duties were not triggered. SLS is entitled to summary judgment on Count 1 of the Amended Complaint.

      B.    <u>SLS DID NOT MAKE FALSE REPRESENTATIONS TO PLAINTIFF.</u>

In Counts 14 through 18 Plaintiff alleges that SLS made numerous false statements to Plaintiff and thus violated section 1692e of the FDCPA.[3] The alleged misrepresentations fall into the following categories:

1. Stating that the amount owed on the loan was not the amount that Plaintiff believed he should owe [ECF No. 18 at p.19-20];

2. Stating that the debt had been accelerated and that Plaintiff was in foreclosure [ECF No. 18 at p.19-20];

3. Stating that SLS's loan modification program followed the federal HAMP program [ECF No. 18 at p.20-21];

4. Stating that its customer service representatives were "loss mitigation analysts" [ECF No. 18 at p.21];

5. Using a small font to communicate payment options [ECF No. 18 at p.21];

6. Stating that Plaintiff could not make payments by ACH [ECF No. 18 at p.21];

---

[3] Specifically, Plaintiff points to §§ 1692e(1); 1692e(2)(A); 1692e(8); 1692e(9); 1692e(10); and 1692e(12), all of which prohibit false representations of one sort or another.

7.  Stating that servicing of the loan had been transferred to SLS [ECF No. 18 at p.22]; and

8.  Communicating false information to the credit bureaus [ECF No. 18 at p.22];

The FDCPA claims, like the other claims, boil down to Plaintiff's disagreement with the amount owed on his loan.  Plaintiff failed to pay the amount owed on his loan and his FDCPA claims must fail, as he had an obligation to pay despite his disagreement. Ervin v. JPMorgan Chase Bank, N.A., 2014 WL 4052895, *6 (D. Md. Aug. 13, 2014).  The representations of which Plaintiff complains were all true and accurate, or in the alternative, non-existent.  SLS provided Plaintiff with the amount owed on his loan, the required monthly payments and the fact of his default. Exhibit 1 at ¶4-11; Exhibit 6.  SLS did accelerate the debt and Plaintiff went through foreclosure. Exhibit 1 at ¶¶ 17 & 20.  SLS's loan modification program followed the HAMP guidelines and used the HAMP mandated forms. Exhibit 1 at ¶ 14-16.  SLS has not seen any evidence that it identified its employees as "loss mitigation analysts" and to the extent there is any such evidence, that statement would not violate the FDCPA, even if false, as set forth below. SLS's payment instructions were legible and Plaintiff does not claim that he did not know how to make payments. Exhibits 3 and 9.  SLS was not required to accept Plaintiff's partial ACH payments. ECF No. 24-6 at pp. 2-3 & 14.  Servicing of the loan was, in fact, transferred to SLS in 2013. Exhibit 1 at ¶4.  The representations which Plaintiff holds out as the bases of his claim were all accurate and, in any event, wholly irrelevant under the FDCPA.

In order for an alleged misrepresentation to constitute a violation of the FDCPA, it must be material to the collection of the debt. Penn v. Cumberland, 883 F.Supp.2d 581, 588-89 (E.D. Va. 2012); Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 373-74 (4th Cir. 2012); Lembach v. Bierman, 528 Fed.Appx. 297 (4th Cir. 2013).  "[I]n order for a false statement to violate the

FDCPA, it must affect a consumer's ability to make intelligent decisions with respect to the alleged debt." Id. at 589; *See* Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033-34 (9th Cir. 2010); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596-97 (6th Cir. 2009); Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009).  In determining materiality, the courts typically examine whether a statement "would mislead or deceive the least sophisticated consumer with respect to the alleged debt." Id.

Aside from the fact that the alleged misrepresentations were not false, the alleged misrepresentations do not meet the FDCPA requirement of affecting a consumer's ability to make intelligent decisions.  None of the alleged misrepresentations could possibly have an effect on a consumer's decision to pay, or not pay, the monthly mortgage payments.  Notably, with regard to the one alleged representation for which there appears to be no evidence - that SLS called its employees "loss mitigation analysts" - there is no logical reading of such a statement that would mislead a consumer with respect to the debt.  That alleged title would not somehow confuse a consumer into thinking they don't have to pay.  Regardless of the title, the information conveyed by SLS was the same – that Plaintiff was in default for failure to pay and that he needed to reinstate the loan and begin making payments in the correct amount.  Plaintiff's FDCPA claims fail because the alleged misrepresentations were true statements and/or not covered by the FDCPA.  SLS is entitled to judgment as a matter of law.

C.      SLS DID NOT USE ANY UNFAIR PRACTICES.

In Counts 19-20 Plaintiff alleges that SLS used unfair practices with respect to Plaintiff and, thus, violated the section 1692f of the Fair Debt Collection Practices Act ("FDCPA").  The alleged unfair practices fall into the following categories:

1.  Communicating credit information to the credit bureaus [ECF No. 18 at p.23];

2.  Unconsciously refusing to accept Plaintiff's payments [ECF No. 18 at p.23]; and

3.  Taking possession of the Property through the Texas foreclosure process [ECF No. 18 at p.23].

As stated previously, SLS's reporting to the credit bureaus was entirely accurate. Plaintiff refused to make the required payments and was in default.  SLS reported Plaintiff as in default.  Furthermore, SLS was under no obligation to accept Plaintiff's partial payments.  The deed of trust expressly provided that SLS had the option of refusing partial payments that did not bring the loan current. ECF No. 42 at p.20-21; ECF No. 24-6 at pp. 2-3 & 14.  Finally, SLS did not take possession of the Property. *See* Exhibit 1 at ¶20; Exhibit 10.  Rather, the foreclosure purchaser, Freddie Mac, took possession of the property by an Agreed Judgment of Possession to which Plaintiff consented. Exhibit 10.  There is simply no factual basis for Plaintiff's claims and Specialized Loan Servicing is entitled to judgment as a matter of law.

D.      SLS DID NOT VIOLATE THE MCDCA.

In Count 26 Plaintiff asserts a claim for violation of the Maryland Consumer Debt Collection Act ("MCDCA") based on (1) his disagreement with the amount SLS and Chase claim is owing on his loan, (2) his claim that SLS did not have a debt collector's license in

Maryland, and (3) his claim that SLS somehow attempted to give the appearance of a governmental relationship by sending Plaintiff HAMP loan modification documents.  For the same reason that the FDCPA claims fail, Plaintiff's MCDCA claim fails.  All of the alleged misrepresentations are predicated on Plaintiff's view of his payment obligations being accepted by the Court.  Plaintiff's view is unequivocally incorrect.  Plaintiff failed to make payments when due and in the proper amount.  Plaintiff refused to pay the additional escrow amounts necessitated by the increase in real estate taxes.

Plaintiff's MCDCA claim against SLS is identical to its claim against Chase and the same result is required.  Plaintiff cannot use the MCDCA to attack the validity or amount of the underlying debt.  The MCDCA is intended to proscribe certain methods of debt collection, not to resolve disputes over the amount owed. Fontell v. Hassett, 870 F.Supp.2d 395, 405 (D. Md. 2012).  As to the claims regarding the HAMP program, Plaintiff's averments are conclusory at best and cannot support a claim under §14-202(9) of the MCDCA.  In any event, the HAMP forms that Plaintiff received were the forms created and mandated by the government for use in the HAMP program, rendering §14-202(9) wholly inapplicable. Exhibit 1 at ¶13-16.  Finally, SLS does have a Maryland collection agency license (license no. 3725) and has been licensed continuously since January 12, 2004. *See* Exhibit 1 at ¶18.  Plaintiff has no factual support for his MCDCA claim and SLS is entitled to judgment as a matter of law.

E.      SLS DID NOT VIOLATE THE MCPA.

Count 27 of the Plaintiff's complaint falls under the Maryland Consumer Protection Act ("MCPA"), Md. Com. Law Code Ann. §13-101, *et seq*.  The first portion of Plaintiff's claim is contingent on the MCDCA violations alleged in Count 26 also being actionable as MCPA claims.  As the MCDCA claims fail, this portion of the Plaintiff's MCPA claims also fail.  The

remaining MCPA allegations against SLS are substantively identical[4] to the allegations against Chase and arise generally from his disagreement as to the amount owed on his loan. Like Chase, SLS is entitled to summary judgment on the MCPA claim.

Unlike an enforcement action brought by the State of Maryland, a private party bringing a MCPA claim must be able to establish that he or she has suffered an identifiable loss. <u>Green v. Wells Fargo Bank, N.A.</u>, 927 F.Supp.2d 244, 254 (D. Md. 2013), *aff'd*, 582 F.Appx. 246 (4th Cir. 2014); <u>Willis v. Countrywide Home Loans Servicing, L.P.</u>, 2009 WL 5206475, *6 (D. Md. Dec. 23, 2009). Plaintiff cannot present any evidence that any of the alleged false statements were actually false and he cannot present evidence of damages. Plaintiff clearly refused to make the required payments to Chase and SLS because of his inaccurate assessment of the proper amount of the escrow payment. Chase and SLS repeatedly advised Plaintiff that he had to make up the past due payments to avoid foreclosure. Any damages suffered by Plaintiff arise from his failure to make the required payments to Chase and his subsequent refusal to make the required payments to SLS. Plaintiff's refusal to pay was not in reliance upon any statement by SLS.[5] Plaintiff did not change his position in any way based on anything that SLS said or did. Plaintiff consistently disputed SLS's position that the loan was in default and cannot possibly have reasonably relied on SLS's true representations to the contrary. *See* <u>Coulibaly v. JPMorgan Chase Bank, N.A.</u>, 2011 WL 3476994, *19 (D. Md. Aug. 8, 2011). Plaintiff's MCPA claim fails as a matter of law.

---

[4] Except for the additional allegation that SLS would not permit ACH payments in the amount that Plaintiff wanted to pay.

[5] More than likely, the refusal to pay was based on Plaintiff's *inability* to pay.

F.     <u>SLS DID NOT VIOLATE THE MMFPA.</u>

The Maryland Mortgage Fraud Protection Act ("MMFPA") essentially codifies common law fraud committed during the mortgage lending or servicing process. Md. Real Prop. Code Ann. §7-401(d).  As the MMFPA is fraud-based, a claimant must prove the elements of fraud by clear and convincing evidence. <u>Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC</u>, 929 F.Supp.2d 502, 530 (D. Md. 2013).   As with the MCPA claim, Plaintiff cannot present evidence of reasonable reliance or damages.    Plaintiff's generalized averments of misrepresentations, reliance and damages do not suffice.  Plaintiff consistently disputed Chase's (and by extension, SLS's) escrow analysis and cannot be said to have relied on any statements by SLS, or to have somehow been damaged by any representations by SLS.  Plaintiff cannot present evidence to show that SLS committed fraud, thus his MMFPA claim fails as a matter of law.

V.     **CONCLUSION.**

The undisputed material facts clearly show that Plaintiff's escrow payment went up significantly, he refused to make the increased payments, and went into default as a result of his refusal to pay.  Plaintiff's entire case is predicated on the illogical position that he should not have been required to pay the additional taxes and insurance.  The failure of Plaintiff's incorrect factual predicate - that there was no default - results in the failure of Plaintiff's claims.  SLS is entitled to judgment as a matter of law on the remaining claims in the Amended Complaint.

Respectfully submitted,

McNamee, Hosea, Jernigan, Kim,
Greenan & Lynch, P.A.


  /s/  Aaron D. Neal
Aaron D. Neal (Bar No. 28566)
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
Tel.    301-441-2420
Fax     301-982-9450
aneal@mhlawyers.com

*Attorneys for SLS*